No. 34,766

EDITH SMITH and ALBERT THORNBROUGH, *Appellees*, v. REPUBLIC UNDERWRITERS, of Waco, Tex., *Defendants;* COMMERCIAL STANDARD INSURANCE COMPANY, of Fort Worth, Tex., and OLAN C. MC-FADDEN, *Appellants*.

(103 P. 2d 858)

Opinion filed July 6, 1940.

*C. H. Brooks, Howard T. Fleeson, Carl G. Tebbe, Wayne Coulson, Paul R. Kitch,* all of Wichita, and *H. L. Sheppard,* of Clay Center, for the appellants.

*C. Vincent Jones, Wayne W. Ryan,* both of Clay Center, *Wayne V. Slankard, Justin Ruark* and *Horace Ruark,* all of Neosho, Mo., for the appellees.

The opinion of the court was delivered by

HOCH, J.: Two separate actions to recover damages arose out of a collision between two trucks, one of which was owned by a permit holder under the motor-carrier act. Plaintiffs were different, but in both actions the defendants were the permit holder and his two insurance carriers. The actions were consolidated for trial and

both plaintiffs prevailed. No appearance was made in this court for defendant McFadden. The appeal is by a defendant insurance company.

The substantive questions presented are whether the plaintiffs established a cause of action against the insurance company, and whether a cause of action for wrongful death survives against it.

Brief statement of the facts will suffice. On October 20, 1937, Frank Smith was driving a truck eastward on highway 24, near Clay Center. Albert Thornbrough was riding with him. His truck collided with a west-bound truck owned by Olan C. McFadden and being driven by Paul Darnell. Both drivers were killed in the collision and Thornbrough was seriously injured. McFadden was an operating carrier under the motor-carrier act and held a certificate or permit issued thereunder. It appears—though there is some contention that the fact was not proved—that he owned two trucks registered under the permit—a Diamond T and a Chevrolet, both of which were covered by liability insurance as the act requires (G. S. 1935, 66-1,128). The Chevrolet truck was specifically insured by the Republic Underwriters Company and the Diamond T by the Commercial Standard Insurance Company, the appellant. The truck involved in the accident was the Chevrolet, but the Republic Underwriters Company went out of business and defaulted in the action after filing an answer.

One action was by Edith Smith, the widow of Frank Smith, and the other by Thornbrough. Plaintiffs in both actions were represented by the same attorneys, but McFadden and the appellant insurance carrier were represented by different attorneys, and while the two actions, involving substantially the same issues of fact, were consolidated for trial the issues were made up upon separate pleadings. Edith Smith recovered a judgment for $2,000 and Thornbrough one for $5,000, both judgments being joint and several against McFadden and the two insurance companies.

Appellant's first contention is that no cause of action was established because there was failure of any proof that its policy covered the Chevrolet truck at the time of the accident. The argument is based on the terms of the policy contained in the endorsement placed thereon under the requirements of the State Corporation Commission, and hereinafter discussed. Appellant contends that the question was raised by demurrer to the evidence and by the motion for a new trial. Appellees contend that counsel were not frank with

the court and did not clearly raise the issue in presenting the demurrer; that having failed to do so they could not raise it on the motion for a new trial and cannot be heard on it here; and that even if it be held that the question was adequately raised below and is here for review, the record is sufficient to show coverage under the policy. Appellees further contend that in any event, they made a prima facie case and that the matter urged by appellant is in the nature of an affirmative defense and hence the demurrer was properly overruled.

We must first examine the corporation commission endorsement on the policy, which reads as follows:

"In consideration of the premium stated in the policy to which this endorsement is attached, the company hereby *waives a description of the motor vehicles to be insured* hereunder and agrees to pay final judgment for personal injury, including death, resulting therefrom, . . . caused by any and *all motor vehicles operated* by the assured *pursuant to the certificate* of public convenience and necessity, license *and permit* issued by the State Corporation Commission. . . ." (Italics ours.)

Let us narrow the issue. It is admitted that appellant's policy does not specifically cover the Chevrolet truck involved in the accident. The policy specifically describing the Chevrolet was issued by the defaulting company. Appellant's policy specifically described only the Diamond T. truck owned by McFadden. But appellant does not contend—and could not do so successfully—that the reason there was no coverage is because the policy does not specifically describe the Chevrolet. A prime purpose of the endorsement was to provide coverage of vehicles operated by the insured even though not specifically described. Motor-carrier operators frequently change or substitute vehicles in connection with their operations, and waiver of description is a necessary provision for protection of the public. (See *Dekat v. American Automobile Fire Ins. Co.*, 146 Kan. 955, 958, 959, 73 P. 2d 1080.) Appellant admits waiver of description, but relies upon the further provision relating to coverage which recites that liability is assumed as to all vehicles—regardless of description—which are operated *"pursuant to the certificate or permit."* There can be no reasonable doubt about the purpose and meaning of this provision. Having given consideration to the commercial operations provided for in the certificate or permit—and therein specifically set out—the company issues a policy covering vehicles engaged in such operations. It does not insure vehicles otherwise engaged—that is, which are being used for commercial,

personal or social purposes outside the operations covered by the permit. Or, as the endorsement has it, the policy covers vehicles being operated *"pursuant to the permit."* Accordingly, in determining whether there was insurance coverage, a material question was whether the vehicle, at the time of the accident, was being operated under or pursuant to the permit. That would probably be true even if the policy had described the Chevrolet instead of describing a truck not involved in the accident. However, that question is not before us here. In any event, it was clearly part of the plaintiff's case to show insurance coverage, and that depended in this case upon whether the vehicle was being operated *"pursuant to the permit."* If a private car covered by the usual policy is involved in an accident, the plaintiff in an action against the insurance carrier must show that the policy covers the car therein described. A plaintiff has the same burden to show coverage when the issue of coverage turns, not upon description of the vehicle, but upon whether it was being used in the operations authorized by the permit. This does not mean that deviation from routes specified in a permit or some other departures from the precise terms of a permit suspend the policy. Not at all. A contrary doctrine has been frequently stated. However, we need not here discuss the limits of the doctrine or cite cases dealing with that question. The issue here is not mere deviation. Nor does the instant issue involve estoppel or other questions which may arise where an operator is violating some provision of his permit. In this connection we must note an obvious misunderstanding which pervades the record. It is the apparent assumption that unless the McFadden truck was being operated *"pursuant to the permit"* it was being operated contrary to the permit or *in violation of the law.* Of course, that does not at all follow. The certificate or permit simply authorizes certain transportation for hire which cannot otherwise be lawfully engaged in. Subject to some qualifications in the case of common carriers, the vehicle may also be lawfully used by the owner for any of the many other purposes for which no certificate or permit is required. Instances, in common knowledge, are so numerous as to require no illustration.

There is nothing novel in the limitation of coverage contained in the instant endorsement. For instance, provisions are common which limit coverage to specified *use* of the vehicle. In fact, the instant provision is really one as to *use.* (A discussion of such limitations will be found in 6 Blashfield, Cyclopedia of Automobile

Law and Practice, 347 *et seq.*) To disregard this limitation in the policy or to hold it invalid would constitute an attempt to expand the insurer's liability, and if accepted by the insurance carrier, an increase in premiums would inevitably result.

In the case of *Whitlock v. U. S. Inter-Ins. Ass'n*, 138 Ore. 383, 6 P. 2d 1088, a bus operator was operating in and about the city of Klamath Falls, Ore., in what was known as "anywhere-for-hire" service. On an issue similar to the instant one, it was held that it was necessary for the plaintiff to prove that the vehicle, owned by the operator, was one of those being operated in the "anywhere-for-hire" business of the insured. In *Basta v. United States F. and G. Co.*, 107 Conn. 446, 140 Atl. 816, the policy covered the car "while being used in public service." (In other words, "pursuant to the permit.") It was held that there was no insurance coverage at the time involved because the car was then being used for the owner's private purposes. In *Lopez v. Townsend*, 37 N. Mex. 574, 25 P. 2d 809, 96 A. L. R. 342, the policy had a rider with a provision identical with the instant one. The insurer assumed liability on automobiles "operated pursuant to a certificate of convenience and necessity." On demurrer the insurance company contended that the complaint stated no cause of action because it did not allege that the vehicle was being operated "pursuant to the certificate." The opinion clearly recognized the necessity of such allegation, but pointed out many passages in the complaint which clearly alleged that the operator was, at the time in question, operating as a public carrier in the service authorized by the permit, and for that reason the demurrer was overruled.

While desiring to avoid all unsubstantial technicalities, we cannot, on a question of law, ignore issues of fact essential to establishment of a cause of action. It was part of plaintiff's case to submit some substantial evidence at least tending to show that the McFadden truck was being used, at the time, in the operations authorized by the permit, and that therefore there was insurance coverage.

We come to the contentions of the appellee.

The contention that the use being made of the truck at the time of the accident is a matter of affirmative defense has been disposed of by what has already been said.

The next contention is that there is sufficient evidence in the record to support a finding that the truck was being operated pur-

suant to the permit. Appellee says that it was alleged and not controverted that McFadden held a permit, and that Darnell was in his employ. Assuming that to be true, the mere existence of the permit does not reach the point, nor does it follow, as a legal presumption, that Darnell, although an employee, was not at the time on a business or pleasure trip of his own. Appellee calls attention to statements of McFadden's attorney which it is said tend to show that the truck was then engaged in operations under the permit. But appellant insurance carrier is not bound by statements made by McFadden's attorney. Nor do we find support for appellee's argument that McFadden's attorney also spoke for appellant. Throughout the record to the final journal entry it appears that the defendants had different attorneys. Nor did McFadden's separate answer admit the fact here at issue, though it did not specifically deny it. In any event, appellant would not be bound by McFadden's answer. Nor do we find anything in McFadden's testimony which goes to the point here at issue. Moreover, in its answer, paragraph eight, appellant specifically "denies that the truck which Paul Darnell was driving was insured by this defendant *at the time of, this collision."* While such statement may not explicitly reveal the basis for the contention, we cannot say that it does not cover it.

Lastly, on appellant's first contention, was the issue fairly and adequately raised in the trial court? It is not necessary to cumber this opinion with lengthy quotations from the record which might be made in discussing this question. Appellee contends that in presenting the demurrer, appellant was not frank with the court and studiously avoided making clear the point here urged. Appellant replies that the point was definitely raised and that it had no obligation to diagram it for the benefit of the plaintiffs. On this somewhat acrid controversy, we only say, after careful examination of the record, that two things are clear—first, that the point was at least technically raised, and second, that neither opposing counsel nor the court understood it. We add that in view of the nature of the contention, and the absence of illumination by appellant, it is not surprising that the point was not discerned. Having no power of divination, we are unable to say whether appellant's counsel was aware at the time that the court had not grasped it. In such a situation, so nebulous at the time to both court and opposing counsel, we cannot say that the court so erred in overruling the demurrer that the case should be returned with directions to sustain it. Nor, in view

of the fact that in presenting the demurrer appellant did call specific attention to the clause "pursuant to the permit" can we say that it was precluded from raising the point on the motion for a new trial. On the motion for a new trial the point was clearly raised and argued. We might find some justification for its doing so if the trial court had at that time expressed some displeasure over appellant's failure—unintentional or otherwise—to make the point clear when the demurrer was presented. But while there is always occasion for regret when a judgment must be set aside for reasons somewhat apart from the merits of the action, we are not prepared to write it down in the book as a rule of law that under circumstances here existing, a litigant would not be entitled to a new trial. We must conclude that the trial court erred in refusing to grant it.

We need only note briefly appellant's contention that any right of action against it for the wrongful death of Frank Smith was abated by the death of Darnell, driver of the McFadden truck. The argument is that McFadden's liability rested upon his responsibility for the acts of his employee and agent Darnell, and that since the cause of action by plaintiff Edith Smith against Darnell's estate did not survive his death under the statute then existing (G. S. 1935, 60-3203) it was thereby abated as to his principal, McFadden, and as to the principal's insurance carrier, the appellant. (The section was later amended by chapter 233 of the Laws of 1939, to provide survival against the personal representative.) The contention is not sound. The right of action against McFadden did not depend upon the right of action against Darnell, and this action is not against Darnell's estate. As the trial court suggested, if Darnell had lived plaintiff might have brought action against Darnell and McFadden or against either of them alone. Since she might have proceeded against McFadden alone, abatement against Darnell has no effect upon the separate right of action against McFadden. Moreover, appellant's insurance policy was not of mere indemnity for McFadden's benefit as against judgments that might be secured against him, but was a liability policy for the protection of the public and upon which action may be brought directly by persons having a cause of action growing out of negligent operation of vehicles covered by the policy. (*Twichell v. Hetzel,* 145 Kan. 139, 64 P. 2d 557.)

The judgment is reversed, with directions to grant a new trial.